IN THE

# SUPREME COURT

OF

# OREGON.

---

Argued January 16, reversed and remanded March 6, rehearing
denied March 27, 1923.

## FIRST STATE BANK OF SUTHERLIN v. KENDALL LUMBER COMPANY ET AL.

(213 Pac. 142.)

**Statutes—Act Requiring Timber Land Owners to Provide Fire Patrol Held Valid as to Subject and Title.**

1. Sections 8970–8974, Or. L., entitled "An act to require owners of timber lands to provide a fire patrol therefor," is not in contravention of the Organic Act, Article IV, Section 20, providing that every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title, notwithstanding that the act provides for maintaining a system of patrolling at the expense of the delinquent land owner.

**Statutes—Penalty Provisions not Foreign to Mandatory Statute so as to Necessitate Expression in Title.**

2. Where a statute contains a command and prescribes a penalty for its violation, there is a direct connection between the two, and neither can be said to be foreign or incongruous to the other.

**Constitutional Law—When Hearing Under Taxing Statutes Necessary for Due Process Stated.**

3. Where a taxing statute fixes the amount of the tax independently of inquiry of a judicial nature, and no change in the amount could result from a hearing, neither notice nor hearing is necessary, but where a change in the amount might result if a hearing was had, as where the amount of the tax is dependent upon value or some other element requiring the exercise of judgment or discretion, then an opportunity to be heard is essential to the validity of the tax.

**Taxation—Statute Requiring Forest Fire Patrol Held Police Regulation and not Tax Measure.**

4. Sections 8970–8974, Or. L., requiring timber land owners to provide a fire patrol, and authorizing the state forester to main-

tain such patrol at the land owner's expense in case of his failure to do so, is a reasonable and proper police regulation to protect the forests of the state from destruction by fire, and its enactment was not an exercise of the taxing power of the state.

**Constitutional Law—Notice and Opportunity for Hearing Sufficient Within Due Process Clause Held Provided by Statute Requiring Forest Fire Patrol.**

5. Under Sections 8970–8974, Or. L., requiring timber land owners to provide a fire patrol, and authorizing the state forester, in case of their failure to do so, to maintain it at their expense, charging the cost therefor against the land, notice and opportunity for a hearing within the due process clause were sufficiently provided for by Sections 4341, 4342, 4354, and 4356, governing the foreclosure of certificates of delinquency against the lands protected.

**Constitutional Law—Statute Requiring Forest Fire Patrol Held not Invalid for Variance of Standards as to What is an Adequate Patrol.**

6. Sections 8970–8974, Or. L., requiring timber land owners to provide a fire patrol, and in case of their failure to do so authorizing the state forester to provide a patrol at their expense, that the standard of what constituted an adequate fire patrol varied according to the locality did not make the statute invalid.

**Constitutional Law—Forest Fire Patrol Act Held not Invalid as Class Legislation.**

7. Sections 8970–8974, Or. L., requiring timber land owners to provide a fire patrol, and authorizing the state forester to do so at the expense of the lands protected if the land owners failed to maintain an adequate patrol, the act was not invalid as class legislation because owners living within one and one-half miles from their lands were not required to patrol them.

**Taxation—Forest Fire Patrol Act not Invalid for Failing to Provide for Uniform Tax Rate.**

8. Sections 8970–8974, Or. L., requiring timber land owners to provide a fire patrol, and authorizing, in case of their failure to do so, the state forester to provide patrol and charge the expenses thereof against the lands protected, not being a taxing statute, is not invalid as failing to provide for a uniform and equal rate of taxation.

From Douglas: JAMES W. HAMILTON, Judge.

In Banc.

REVERSED AND REMANDED.   REHEARING DENIED.

---

5. What notice is necessary to due process of law in tax proceedings, see note in **L. R. A.** 1916E, 5.

For appellant there was a brief over the names of *Mr. B. L. Eddy* and *Mr. George Neuner, Jr.,* with an oral argument by *Mr. Eddy.*

For respondent there was a brief over the name of *Messrs. Rice & Orcutt,* with an oral argument by *Mr. Dexter Rice.*

RAND, J.—This suit was brought to foreclose a certificate of delinquency issued pursuant to the provisions of Chapter 247, Laws of 1913, comprising Sections 8970–8974, Or. L.  This act is entitled: "An Act to require owners of timber lands to provide a fire patrol therefor," and reads as follows:

"Section 1.  Every owner of timber land in the State of Oregon shall furnish or provide a sufficient fire patrol therefor, during the season of the year when there is danger of forest fires, which patrol shall meet with the approval of the State Board of Forestry.

"Section 2.  In case any owner or owners shall fail or neglect to provide such fire patrol, then the State Forester, under direction from the State Board of Forestry, shall provide the same at a cost not to exceed five (5) cents per acre per annum.  Any amounts so paid or contracted to be paid by the State Forester, shall be a lien upon the property, and shall be reported by the State Forester to the county court of the county in which such lands are situated, and shall by such court be levied and collected with the next taxes on such lands in the same manner as taxes are collected.  Said county court shall instruct the proper officer to extend the amounts on the assessment-roll in a separate column, and the procedure provided by law for the collection of taxes and delinquent taxes shall be applicable thereto, and upon collection thereof, the county court shall repay the same to the State Forester to be applied to the expenses incurred in carrying out the provisions of this act.

"Section 3. For the purposes of this act, any land shall be considered timber land which has enough timber standing or down, to constitute, in the judgment of the State Board of Forestry, a fire menace to itself or adjoining lands.

"Section 4. The owner of any land coming under the provisions of this act, who shall reside within one and one-half miles of said land, shall be considered, by virtue of said residence, to maintain a sufficient fire patrol, and shall not be compelled to maintain additional patrol on such land.

"Section 5. For the purposes of this act, an adequate fire patrol shall be construed to mean one equal to that maintained by 50 per cent of timber owners in the same locality, or under similar conditions in other localities, who are in good faith patrolling their lands against fire."

The respondents, who were the defendants in the court below, attack the constitutionality of this act upon four grounds. These objections are stated in their brief as follows:

"1st: That said act embraces more than one subject matter not expressed in the title of the act.

"2d: That it is an attempt to take the property of the defendant without due process of law, in this,— that said act attempts to provide for the levying and collection of an assessment against the property of the defendant without providing defendant any opportunity at any stage of the proceedings to be heard in the matter, and said act fails to provide for any notice to the taxpayer whatever, or to afford him any opportunity for hearing.

"3d: That said act is unconstitutional for the reason it is class legislation, in this, that it permits 50 per cent of the timber owners in any locality to determine what constitutes an adequate fire patrol, and is also an attempt by the legislature to delegate legislative authority to the owners of 50 per cent of the timber in a given locality.

"4th: That said Chapter 247 does not provide for a uniform and equal rate of taxation, but on the con-

trary, exempts some owners and permits other owners to determine what constitutes an adequate fire patrol, and leaves the same matter in other cases to be determined by the State Forester.''

The lower court held that this act was unconstitutional and that certificates of delinquency issued pursuant thereto were unauthorized and void. The correctness of this ruling is the only question involved on this appeal.

1. A careful reading of this act will disclose, we think, that it is not in contravention of Article IV, Section 20 of the Organic Act, which provides that ''Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title,'' etc. Probably no other clause in the Constitution of the state has been more often considered by this court, and the meaning thereof more definitely established than the one referred to. This provision ''was adopted,'' said Mr. Justice Wolverton, speaking for the court in *Clemmensen v. Peterson,* 35 Or. 47 (56 Pac. 1015), ''to prohibit the legislature from combining in one act subjects wholly incongruous, diverse in their nature, and having no perceptible or necessary connection with each other, * * *'' In that case the act under consideration was entitled: ''An act to reincorporate the Town of Marshfield,'' and it was urged that a provision in the charter conferring power upon the record to act as a justice of the peace was not germane to the subject matter expressed in the title. In disposing of that question, Mr. Justice Wolverton said:

''The purpose of the incorporation of towns and cities is to provide a system of local self-government. This comprehends investing them with the ordinary powers incident to such institutions, comprising legislative, police, and judicial powers, and other govern-

mental functions apposite and requisite to the promotion and maintenance of the organization. Now, it would seem that the design of Section 56 of the reincorporating act was to confer judicial power upon the recorder—a function appertaining to the city government, and therefore cognate to the purpose of the incorporation, and not in contravention of the provision of the Constitution in Article IV, § 20. * * It may be said that a city could carry on its municipal government without the assistance of a justice of the peace; yet, in making provisions touching the judicial department of its government, it has been usual, in this state, to extend such power to the recorder, and it is not believed to be foreign to the subject matter of the act of incorporation."

In *State* v. *Shaw*, 22 Or. 287 (29 Pac. 1028), where the title to the act under consideration read: "An act to protect salmon and other food fishes in the State of Oregon and upon all waters upon which this state has concurrent jurisdiction, and to repeal sections * * ." The body of the act contained a provision making it unlawful to cast sawdust into any stream. The defendant was indicted for depositing sawdust in a stream in violation of the provisions of the act, and it was urged that the inclusion of this provision was in violation of the clause of the Constitution now under consideration. In delivering the opinion of the court, Mr. Justice BEAN cited numerous authorities, and in support thereof said:

"If all the provisions of the law relate directly or indirectly to the same subject, are naturally connected, and are not foreign to the subject expressed in the title, they will not be held unconstitutional as in violation of this clause of the constitution. * * This clause is not violated by any legislative act having various details properly pertinent and germane to one general object. The question is, whether, taking from the title the subject, we can find anything in the bill which cannot be referred to that subject. The gen-

eral object and purpose of the act in question here is to protect salmon and other food fishes; and whatever means may tend directly or indirectly to accomplish this object, may be properly included in the act.''

Again, through Mr. Justice Bean, this court said, in *Simon* v. *Northrup,* 27 Or. 487 (40 Pac. 560, 30 L. R. A. 17).

''The subject or general object of the law in question, as expressed in its title, is the acquisition, control, and management of certain specified bridges and ferries across the Willamette River at Portland, and the details by which it is to be accomplished are matters properly connected therewith, and do not constitute more than one subject within the meaning of the Constitution.''

In *Corvallis & Eastern R. Co.* v. *Benson,* 61 Or. 359 (121 Pac. 418), the act under consideration was entitled: ''An act to provide for the construction of the Willamette Valley & Coast Railroad.'' The act itself contained a provision granting certain tide-lands belonging to the state to the railroad company, and authorized the company to mortgage them under certain conditions for the purpose of raising funds for the construction of the road. It was argued in that case that the grant was not germane to the subject embraced in the title. This court, through Mr. Justice Burnett, said:

''It is not necessary that the title to an act should be as full and complete in its terms as the act itself. It is enough if the title is a fair index of the general purposes of the proposed law. The details may properly be worked out in the body of the act. They are not necessarily a part of the title. Every intendment is in favor of the constitutionality of an act of the legislative assembly; and if, by any fair inference, the terms of the statute may be found to be cognate to the terms of the title the law will stand, and will

not be declared unconstitutional. Provision for the construction of the Willamette Valley & Coast Railroad is the only subject mentioned in the title of the act in question. We conclude that within the meaning of Section 20, Article IV, Constitution of Oregon, the grant of land and other matters set forth in the act itself are properly connected with its subject, and that, as against objections to the title, the statute in question is valid.''

In *Bailey* v. *Benton County*, 61 Or. 390 (122 Pac. 755), the plaintiff sought to recover for injuries caused by the breaking down of a county bridge over which he was lawfully traveling. The act under which the recovery was sought was a general revision of all previous road legislation and gave a right of recovery in such case. But the title contained no direct reference to such right. In disposing of the objection there urged, which was the same as that urged here, this court, through Mr. Justice McBride, with approval restated the rule above quoted from *State* v. *Shaw,* and said:

''The act in question is very comprehensive in its scope, being a general revision of all our previous road legislation; and, while the question of recovery from the county, in case of injury upon public roads, is not expressly mentioned in the title, we think that subject is so related to general legislation, pertaining to public roads, that it may be said to be 'properly connected' with the general subject which was the purpose of the act, namely, the laying out, working, keeping in repair and managing public roads.''

The decision of this court in the case of *Eastman* v. *Jennings etc. Co.,* 69 Or. 1 (138 Pac. 216, Ann. Cas. 1916A, 185), is even more decisive upon the question involved here. The act in question there, permitted recovery of double damages for injuries by fire resulting from the willful, malicious or negligent acts of the defendant. The title to the act made no refer-

ence to such remedy. In overruling the objection there urged, as here, the court, through Mr. Justice Ramsey, said:

"Everything in the act referred to was intended for the protection of the forests. Hence, the protection of the forests is the subject of said act, within the meaning of Article IV, Section 20, of the Constitution, and that was the only thing that it was necessary to state in the title of said act. Everything provided by the various sections of said act is intended to aid in protecting the forests, and all the provisions of the act are matters properly connected with said subject. It is the subject of the act, and not 'the matters properly connected therewith,' that shall be expressed in the title."

2. The general object and purpose of this act was to prevent the destruction by fire of the forest lands within the state. To accomplish this purpose all private owners of forest lands are required by this act to maintain a fire patrol over their lands during the dry season of each year. Recognizing that some timber land owners might not comply with the law, the legislature properly included in the act a provision whereby, through the state forester, a system of patrolling such private lands could be maintained at the expense of the delinquent land owner, and provided a method whereby this expense could be collected from such owner. As the means thus adopted tended to prevent the destruction of forests by fire, and was essential to the accomplishment of the purpose of the act, it was proper to include this provision in the act. Without some such provision, obedience to the law could not be enforced. Where a statute contains a command and prescribes a penalty for its violation, there is a direct connection between the two, and neither can be said to be foreign or incongruous to the other. This objection, therefore, is without merit.

The complaint alleges that the exaction, in these proceedings, of the charges for which the certificate of delinquency was issued, constitutes a tax. Plaintiff's position is now changed, and it now argues that it is not a tax, but that the measure under which the exaction was imposed is a mere police regulation. The lower court assumed that the exaction from the defendants, under the authority of this act, of the amount expended by the state forester in patrolling defendants' lands, would constitute a tax, but in effect held that whether the same would constitute a tax or not, under the principles announced in *Hagar* v. *Reclamation District*, 111 U. S. 701, the exaction of these charges for the enforcement of this certificate in these proceedings would operate to deprive the defendants of their property without due process of law, for the reason that no notice or opportunity for a hearing upon the amount of these charges was afforded to the defendants at any time before this amount had been extended upon the tax-roll and the certificate of delinquency issued. This ruling was based upon the assumption that a certificate of delinquency, when issued, has the conclusive force and effect of a judgment, and results in a valid and enforceable lien against the land for the amount thereof, and that this amount, whether erroneous or not, cannot be questioned or corrected in any foreclosure proceedings. The defendants urge this as a ground of objection against the validity of this certificate. Mr. Justice FIELD, who delivered the opinion in that case, very clearly points out that "whether notice to him [the taxpayer] is at all necessary may depend upon the character of the tax and the manner in which its amount is determinable." In that case he said:

"Of the different kinds of taxes which the state may impose, there is a vast number of which, from

their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll-taxes, license taxes (not dependent upon the extent of his business), and generally, specific taxes on things, or persons, or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question, that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is, therefore, invaded. Thus, if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard, or bushel, or gallon, there is nothing the owner can do which can affect the amount to be collected from him. So, if a person wishes a license to do business of a particular kind, or at a particular place, such as keeping a hotel or a restaurant, or selling liquors, or cigars, or clothes, he has only to pay the amount required by the law and go into business. There is no need in such cases for notice or hearing. So, also, if taxes are imposed in the shape of licenses for privileges, such as those on foreign corporations for doing business in the state, or on domestic corporations for franchises, if the parties desire the privilege, they have only to pay the amount required. In such cases there is no necessity for notice or hearing. The amount of the tax would not be changed by it.

But where a tax is levied on property not specifically, but according to its value, to be ascertained by assessors appointed for that purpose upon such evidence as they may obtain, a different principle comes in. The officers in estimating the value act judicially; and in most of the states provision is made for the correction of errors committed by them, through boards of revision or equalization, sitting at designated periods provided by law to hear complaints respecting the justice of the assessments. The law in prescribing the time when such complaints will be heard, gives all the notice required, and the proceeding by which

the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law.''

3. It will thus be seen that that court recognizes a well-marked distinction between two different classes of tax cases, and holds that in the one class, notice and an opportunity to be heard at some stage of the proceedings are essential to the validity of a tax, while in the other class of cases, such notice and an opportunity to be heard by the party whose property is to be affected thereby, are not necessary to constitute due process. The line of distinction between these two classes of cases seems to be that where the law fixes. the amount of the tax independently of any inquiry of a judicial nature, and no change in the amount could result from a hearing, neither notice nor hearing is necessary, but where a change in the amount might result if a hearing was had, as where the amount of the tax is dependent upon value or some other element requiring the exercise of judgment or discretion, making the fixing of the amount judicial in its nature, then an opportunity to be heard is essential to the validity of such tax.

4. Under this statute every owner of timber lands within the state is commanded to patrol them during the dry season of the year, when fires are liable to occur. If any owner fails to patrol his own lands, it is made the duty of the state forester to furnish a fire patrol therefor. The law provides that the amount of the expense of the state forester in patrolling privately owned lands, which the owner has failed or neglected to patrol, shall be reported by the state forester to the appropriate County Court, and that this amount shall be extended on the assessment-roll of the county and shall become a lien upon the lands so patrolled, and that this amount shall be collected

in the same manner and at the same time that taxes are collected, and when collected, shall be repaid to the state forester, and makes the procedure applicable to the collection of taxes and delinquent taxes applicable to the collection thereof. The money which the state forester, by this act, is directed to expend, belongs to the state, and, when collected, is repaid to the state. This statute was not designed for the purpose of raising revenue, and its enactment was not an exercise of the taxing power of the state. The act is a reasonable and proper police regulation designed to protect the forests of the state from destruction by fire. The method adopted by the legislature to compel the delinquent owner to reimburse the state for the moneys so expended provides merely for the collection of an indebtedness imposed under the police power of the state, and not for the collection of a tax.

5. But whether the exaction of these charges is in the nature of a tax, or is merely the collection of an indebtedness imposed under the police power of the state, we think that notice and an opportunity for a hearing at some stage of the proceedings are essential to the validity of the lien sought to be foreclosed in this suit. If the owner of any timber land has himself provided a patrol therefor, as required by the act, and it is sought to impose upon him a charge for another and a different patrol of the land furnished by the state forester, and to exact from him an involuntary payment of the charge, then the question of whether the land owner himself has furnished a sufficient patrol to comply with the statute, and because thereof is not liable for the charges sought to be imposed against him, is judicial in its nature, concerning which the owner is entitled to be heard, and if the statute deprives him of this right, it is not due process. The right to be heard upon this and every

other like question, however, is, we think, fully preserved and protected by other statutes governing the foreclosure of the certificate of delinquency involved here.

Section 4341, Or. L., provides that all certificates of delinquency shall contain, among other things, a statement of the name and residence of the person to whom issued; a description of the property assessed; the year or years for which assessed; the amount of the tax and the interest due; the name of the person to whom assessed; the rate of interest the certificate shall bear; the time when a deed may be had, if not sooner redeemed, and a guaranty that if, for any irregularities on the part of the taxing officers, such certificate is void, the county or municipality to which the taxes were paid will repay the holder the sum paid thereon, together with interest thereon at the rate of 6 per cent per annum from the date of its issuance.

Section 4342, Or. L., provides that a "certificate of delinquency shall be *prima facie* evidence that: (1) The property described was subject to taxation at the time the same was assessed. (2) The property was assessed as required by law. (3) The taxes or assessments were not paid at any time before the issuance of the certificate. (4) Such certificates shall have the same force and effect as a judgment, execution and sale of and against the premises included therein."

This statute does not give to certificates of delinquency a conclusive effect. It makes them nothing more than *prima facie* evidence of having the force and effect of a judgment, execution and sale. Since the statute prescribes that this certificate of delinquency shall be *prima facie* evidence of the effect to be given to it, the meaning of the statute is that it is

competent to controvert the enforceability of this
certificate by any competent evidence, which, in itself,
is sufficient to overcome its *prima facie* character.
Therefore, the owner of the land affected thereby
is not precluded from establishing, by any compe-
tent proof, that this certificate of delinquency, for
any sufficient legal reason, ought not to be given the
force and effect of a judgment, execution and sale.

Section 4354, Or. L., *inter alia,* provides that the
"court shall examine each application for judgment
and decree foreclosing the tax lien or liens, and if
defense, specifying in writing under oath the particu-
lar cause of objection, be offered by any person inter-
ested in any of said lands or lots to the entry of
judgment and decree against the same, the court shall
hear and determine the matter in a summary manner
without other pleading, and shall pronounce judg-
ment and decree as the right of the cause may be."
It also provides that "the court shall give judgment
and decree for such taxes, assessments, penalties, in-
terests and costs as shall appear to be due upon the
several lots or tracts described in said summons and
application for judgment and decree," etc.

Section 4356, Or. L., provides for an appeal to this
court from the judgment and decree of the Circuit
Court, and Section 4363, Or. L., *inter alia,* provides
that parties not personally served with the notice or
summons, and who did not appear in the foreclosure
proceedings, may, for good cause shown, be allowed
to defend at any time within one year after the entry
of the judgment or decree, and directs that if the de-
fense be successful, the judgment or decree shall be
vacated. Other provisions of the statute plainly in-
dicating a legislative intent to protect the land owner
from fraud, mistake or extortion and to afford him a
full and complete hearing in the foreclosure proceed-

ings, might be cited, but it is unnecessary, as those referred to show that the suit itself gives to the defendants the notice and opportunity for a hearing required to constitute due process.

6. Defendants assert in their brief that under the provisions of this act 50 per cent of the timber owners of one locality may determine what constitutes an adequate fire patrol, and that this action upon their part makes the law for the remaining owners, and state that two small owners in a locality may thus determine the law for another person owning many times as much timber as that owned by the two. They also contend that what constitutes an adequate fire patrol in one locality may not, under the law, constitute an adequate patrol in an adjoining locality.

The legislature saw fit to prescribe a standard for determining what should constitute an adequate fire patrol. This standard varies in different localities and conforms to such patrol as timber land owners in the different localities "who are in good faith patrolling their lands against fire," and having knowledge of the local fire hazards, have found to be sufficient for the protection of their own lands. The matters legislated upon and the standard so prescribed were wholly within the control of the legislature. The legislature, and not the courts, are authorized to determine what standard for the different localities would best accomplish the purpose of the statute. The fact that the legislature has prescribed a different standard in one locality from that prescribed in others in order to meet the varying conditions of the various localities throughout the state, presents no adequate reason for holding the law to be invalid.

7. Defendants also contend that because the legislature has prescribed that owners of timber lands who live within one and one-half miles from the land

are not required to patrol such lands, the act is class legislation, and confers a privilege upon them which is not enjoyed by others who live at a greater distance from their lands.

It is reasonable to suppose that the owner of timber lands who resides within a mile and one-half of such lands, from self-interest alone, will use all diligence necessary to see that his timber is not destroyed by fire. It was within the power of the legislature to make this provision and to exempt such land from the control of the state forester. If there is anything wrong with this act in that respect, the legislature must change it. But we can see no reasonable ground for criticism because the law contains this provision. Defendants call attention to no constitutional provision violated by these provisions, and cite no authorities to sustain these latter contentions. And we can see no reason why the law should not be upheld.

8. The fourth objection urged is disposed of by our holding that the exaction of the charges for which the certificate of delinquency was issued was not a tax, and therefore it does not come within the constitutional provisions with respect to assessment and taxation.

For the reasons stated, the decree appealed from will be reversed and the cause will be remanded for such further proceedings as are not inconsistent herewith.

REVERSED AND REMANDED.   REHEARING DENIED.

BURNETT, J., dissents.