Argued September 12; modified September 27, 1932

WEINACHT ET UX. *v.* BOWER, SHERIFF

(14 P. (2d) 622)

See 6 R. C. L. 446 (3 Perm. Supp., 1720).

*Roy F. Shields,* of Portland (Jas. G. Heltzel, of Salem, on the brief), for appellants.

*W. C. Winslow* and *Custer E. Ross,* both of Salem (John H. Carson, District Attorney, of Salem, on the brief), for respondent.

BELT, J. Plaintiffs, who are residents and taxpayers in a part of Marion county having no high school, challenge for themselves and others similarly situated the constitutionality of the county high school tuition fund law (§§ 35-4101 to. 35-4113, Oregon Code 1930) and seek to enjoin the collection of a special tax levied upon their property under and by virtue of such law. The circuit court, upon refusal of the plaintiffs further to plead after demurrer to their complaint had been sustained, dismissed the suit.

The purpose and object of the law under attack is to offer high school education to children who reside in a school district not maintaining a high school, by permitting them to attend a high school in some other

school district. To accomplish such purpose the act in effect divides each county into what may be designated as high school districts and non-high school districts and authorizes a tax to be levied upon all of the property not situated in any high school district to defray the cost of educating high school pupils coming from such territory.

The county high school tuition fund law, so far as material herein, may be thus briefly summarized:

Section 35-4102 provides that the school clerk of each high school district shall make an annual report to the county school superintendent, showing, among other things,

"\* \* \* the total number of new high school pupils enrolled during the year, the total cost of maintaining the high school or high schools during the year, the cost of educating each high school pupil during the year, the name, post office address and elementary school district residence of every new pupil attending high school in his district and residing in territory not embraced in any high school district, and the total number of such new pupils, and such other information as may be required by the superintendent of public instruction or the county school superintendent. \* \* \*"

The items to be used in reporting total cost of maintaining and operating the high school are specifically enumerated, as follows:

"All salaries, supplies, fuel, water, light and power, telephone, printing, insurance, stationery, repairs, transportation, interest on current warrants, interest upon the fair value of the investment in the high school buildings, including shops, gymnasiums, garages, and the like, after depreciation has been taken into consideration (and) interest on the fair value of the investment in high school furniture, equipment and apparatus, after depreciation has been taken into consideration."

Section 35-4103 defines "new pupil" and "high school district."

Section 35-4104 provides for computation of cost where high school students come from other counties.

Section 35-4105 reads as follows:

"Not later than December 1st of each year, the county school superintendent of each county in which there is no county high school, shall certify to the county court of his county, the total cost, for the preceding year, of educating all high school pupils residing in his county and not in any high school district, and the estimated amount needed for that purpose for the current year."

Section 35-4106 provides for the mandatory levy of a special tax sufficient in amount to defray the cost, for the current year, of educating all high school pupils residing in such county and not in any high school district.

Section 35-4107 places upon the county school superintendent of each county the duty of apportioning the high school fund.

The operation of the law may thus be briefly described:

Assume that high school district No.—— has an enrollment of 1,000 students, 200 of whom come from non-high school districts. The school clerk reports the total cost of maintaining and operating the high school during the year to be $100,000. This amount is divided by the daily average attendance to ascertain the cost per capita. The per capita cost is multiplied by the number of students from outside districts. Similar reports are filed with the county school superintendent by other school clerks from districts maintaining high schools. The school superintendent, from a compilation of these reports, certifies to the county court

the total cost of educating all of the high school pupils residing in non-high school districts, which we shall assume to be $500,000. The county court thereafter levies a special tax upon all of the taxable property in the county not in any high school district, sufficient to defray such cost. When the taxes are collected and placed in the high school fund, the county school superintendent aportions the funds to the various high school districts in accordance with reports submitted by their respective school clerks.

Plaintiffs allege that the county high school tuition fund law violates the Fourteenth Amendment to the Constitution of the United States, by depriving them of their property without due process of law.

Plaintiffs charge that the law "commits to a ministerial officer in each high school district, namely the school clerk of such district, the arbitrary power to determine the amount which shall be charged by such district as 'interest upon the fair value of the investment' of such high school district in high school property, including buildings, furniture, equipment and apparatus 'after depreciation has been taken into consideration,' and empowers and directs such school clerk to make a quasi judicial determination of the amount of such high school district's investment in such property, the amount of the depreciation thereof and the rate of interest thereon, without affording any right of review of such determination and without affording any notice or opportunity to be heard with respect thereto to any taxpayer owning property outside of such high school district, although the amount of the tax to be paid by such taxpayers is dependent upon the determination so made."

In reference to the above constitutional provision, the plaintiffs further aver, in effect, that the delega-

tion of such power to a ministerial officer, elected only by the people of high school districts, is inherently wrong in that such officer is "necessarily prejudiced and partisan in favor of the taxpayers within such high school district and will, in computing the cost of maintaining and operating the high schools, greatly overestimate the valuation of the high school district property to the end that an undue and unjust tax burden is placed on taxpayers not residing in a high school district."

■ The vital question in this case is whether the plaintiffs have been denied due process of the law. The statute under attack purports to delegate to the school clerk, a ministerial officer, the power to determine the fair value of the investment in the high school buildings, furniture, equipment and apparatus, after depreciation has been deducted. That such determination involves the exercise of judgment and discretion is beyond doubt. It is in the nature of a judicial act. No method of fixing the valuation is provided by the statute. Is it the original cost? Or is it the fair market value of the property? What will be the percentage of depreciation? These are questions wherein the answer of the school clerk is final. From his decision there is no appeal. Yet the valuation thus made is the basis of a tax rate and those who are obliged to pay will not be heard in protest. Neither can such valuation be reviewed by the county school superintendent, county court, or any other tribunal.

■■ What has been said has no application, however, to the other items specified in the statute, which are factors in determining the total cost of maintaining the high schools. Expense incurred for salaries, supplies, fuel, water, etc., is the result of contract in which the clerk has no voice. In reporting these items, the clerk

acts in a purely ministerial capacity. Mathematics, rather than discretion or judgment, controls so far as reporting these items is concerned. Neither do we think the statute vests any discretion in the clerk in determining the rate of interest. Since no rate is specified, the law implies the legal rate of six per cent.

■ "Due process," as used in the Federal Constitution, implies that the person whose property rights are affected is entitled to his "day in court." It means that no person shall be deprived of his property without notice and an opportunity to be heard. In special assessment or tax proceedings, the courts, with unanimity, have held that the property owner is entitled to notice and an opportunity to be heard at some stage of the proceedings before the tax is irrevocably fixed: *Dant & Russell, Inc. v. Pierce,* 122 Or. 337 (255 P. 603); *First State Bank v. Kendall L. Co.* 107 Or. 1 (213 P. 142); *Paulson v. City of Portland,* 16 Or. 450 (19 P. 450).

Counsel for the defendant recognize this salutary rule, as in their brief, it is said: "The burden of the complaint made in this case is that the clerk of each high school district is permitted to determine the value of investment of the high school district in school buildings and the like, the amount of depreciation and the rate of interest to be charged without any opportunity to those not residing within the high school district to be heard and concerning which they have no right of review. If this were true there could be no question but that the act would be unconstitutional." It is asserted, however, that the plaintiffs have been accorded "due process of the law" in that they may be heard in the foreclosure of the tax delinquency certificate. Relative to this contention the defendant relies strongly on the holding of this court in *First State Bank v. Ken-*

*dall L. Co.,* supra. The question in the Kendall case was whether a lien for moneys expended by the Board of State Forestry, in patrolling timber land pursuant to chapter 247, Laws 1913, could be enforced as against the objection that the provisions of said chapter were unconstitutional, in that it permitted private property to be taken without due process of law since no opportunity was given the owner to be heard upon the question of the validity of the lien, and it was held that such opportunity was afforded in the suit in which the certificate of delinquency therefor was being foreclosed, because of the fact that, under § 69-806, Oregon Code 1930, the certificate was made prima facie evidence only and not conclusive upon the question of whether the property was subject to be assessed at the time and had been assessed as required by law. Under that chapter all timber land owners are required to maintain a patrol of their lands against fire and, upon their failure to maintain such patrol, the state forester is required to provide a patrol therefor at a cost not to exceed five cents per acre and the amount expended, when reported to the county court and extended upon the tax roll, is made a lien upon the land and, if not paid, is to be collected in the manner provided for the collection of taxes that have been assessed against the land. If the owner failed to patrol his land, the law afforded notice to him that that duty was being performed by the state forester and that the moneys expended in the patrol thereof would be collected in the manner provided by law for the collection of taxes. If the land was not timber land or, if, under the conditions prescribed by the statute, the land was not subject to be patrolled, that fact could be shown as a defense in the foreclosure suit. For that reason, the law was held to be constitutional.

In the instant case, if the present law is constitutional, the owner of lands which have been assessed pursuant thereto will have no defense in the foreclosure proceedings, for his property is subject to taxation and is being assessed under the specific direction of the statute. The cases, therefore, are not parallel and what was held in *First State Bank v. Kendall L. Co.*, supra, is not applicable to the facts of this case. In this case, in the tax foreclosure proceeding the constitutionality of the law in question could be presented, but not whether the clerk had placed an arbitrary and unjust valuation on the high school property.

██ In passing on the constitutionality of the act, we are not permitted to assume that the school clerk is "necessarily prejudiced and partisan." Indeed, the presumption is that he will fairly and impartially administer the law in determining the valuation of the high school property. True, it might be a much better legislative policy to delegate this power to some other officer or tribunal which, like Caesar's wife, would be above suspicion, but that is not for the courts to decide. Courts are not the refuge against unjust, unwise, and oppressive laws unless they transgress either the State or the Federal Constitution.

█ It is also urged that the act violates the Fourteenth Amendment to the Federal Constitution in that it deprives taxpayers not within high school districts of equal protection of the laws. The trial court, in an able opinion, thus answers this contention: "Plaintiffs * * * reason from a wrong premise, in that they assume the statute in question to taken cognizance of non-high school districts as districts, when in fact the statute nowhere relates to non-high school districts as such but in effect does create one district out of all that portion of each county not included in a high

school district, for the purpose of levying taxes to meet the cost of education of those pupils seeking high school education and residing within such district. Since the law is a general law operating uniformly throughout the state, therefore it is not violative of the section of the constitution referred to." Citing *Johnson v. Jackson County,* 68 Or. 432 (136 P. 874). The argument advanced in reference to this point is, in its ultimate analysis, closely analogous to that of the taxpayer who complains against a school tax because he has no children. There is no system of taxation which the human mind has yet been able to devise which distributes the burdens of government with mathematical exactitude. There is unquestionably a reasonable basis for the classification of taxable property which the legislature has made.

In our opinion there is no merit in the other reasons assigned for declaring this act unconstitutional. We shall, therefore pass them without comment.

■ Resolving every reasonable doubt in favor of the validity of the act, we are constrained to hold that the part thereof delegating to a ministerial officer the power to determine the valuation of high school property as a basis for a tax, without notice or opportunity for the taxpayer to be heard, violates the "due process" clause and is therefore unconstitutional. This part of the act, however, does not invalidate the remainder thereof.

It follows that the decree of the lower court dismissing the injunction suit is reversed and a decree is here entered enjoining the collection of that part of the tax levied against the property of plaintiffs by reason of including in the items of cost interest on the valuation of the property of the high schools in the county, after depreciation has been deducted.

KELLY, J. (Dissenting). I concur with the opinion of the court, except in so far as it declares the provision of the statute unconstitutional which directs the clerk of each high school district to determine the valuation of high school property as a basis of tax.

In Oregon, the mode of enforcing a tax is by judicial proceeding: Section 69-726 and sections 69-814 to 69-822, inclusive, Oregon Code 1930. In my opinion, this satisfies the constitutional requirement of due process of law.

*First State Bank of Sutherlin v. Kendall Lumber Company*, 107 Or. 1 (213 P. 142); *Wells Fargo & Co. v. State of Nevada*, 248 U. S. 165 (63 L. Ed. 190, 39 S. Ct. 62), and cases there cited; 3 Cooley on Taxation (4th Ed.) 2270, section 1120, citing *Vanceburg & S. L. Turnpike R. Co. v. Maysville & B. S. R. Co.* (Ky.) 63 S. W. 749.

I think that the decree of the circuit court should be affirmed.