Argued January 20; Reversed March 2, 1948

# STARKER *v.* SCOTT, STATE TREASURER ET AL.

### 190 P. (2d) 532

*Rex Kimmell,* Assistant Attorney General, and *E. G. Foxley,* Assistant Attorney General, of Salem, argued the cause for appellants. With them on the brief was George Neuner, Attorney General, of Salem.

*Manley B. Strayer* and *Frederick H. Torp,* of Portland, argued the cause for respondents. With them on the brief were Omar C. Spencer and Hart, Spencer, McCulloch & Rockwood, of Portland.

Before ROSSMAN, Chief Justice, and LUSK, BELT, KELLY, BAILEY and BRAND, Justices.

BRAND, J.

The plaintiffs, as citizens of the State of Oregon and owners of forest lands situated in Columbia County, by their complaint allege that the defendants, acting under the authority of O. C. L. A., § 107-243 and § 92-211, have unlawfully assessed, levied and disbursed certain moneys exacted from the plaintiffs and others similarly situated. Pursuant to the allegations and prayer of the complaint, the trial court entered a decree in part as follows:

"That Section 107-243, O. C. L. A., insofar as it requires the addition by the State Forester of a penalty of ten per cent to the cost of fire protection, makes said penalty a lien upon property, directs the State Forester to report said ten per cent penalty to the county court of the county in which such property is situated, and directs the levying and collection of said ten per cent penalty, be and the same hereby is declared to be unconstitutional and void."

The court also held, as to the Tithing Act:

"That Section 92-211, O. C. L. A., insofar as it requires the payment into the general fund of the State of Oregon of any portion of the receipts of the State Board of Forestry from forest patrol assessments, be and the same hereby is declared to be unconstitutional and void."

The defendants as public officers were enjoined from enforcing the provisions in question.

In the year 1913 the legislature enacted a law entitled "An act to require owners of timber lands to provide a fire patrol therefor." Laws, 1913, Chapter 247. Section 1 of that act as amended in 1925 reads as follows:

"Every owner of timber land in the state of Oregon shall furnish or provide therefor, during the season of the year when there is danger of forest fires, adequate protection against the starting or spread of fire thereon or therefrom which shall meet with the approval of the state board of forestry." O. C. L. A., § 107-241.

Section 2 of the 1913 act as amended reads in part as follows:

"In case any owner or owners shall fail or neglect to provide such protection against the starting or spreading of fire, then the state forester, under direction from the state board of forestry, shall provide the same at a cost not to exceed five cents (5¢) per acre per annum; provided, that when in time and localities of unusual hazard adequate protection of timbered areas demands expenditure in excess of five cents (5¢) per acre, the state forester, with approval of the state board of forestry, may, after thorough investigation of need thereof, authorize and approve expense sufficient properly to safeguard timber resources, but amounts so approved shall not exceed actual cost of work performed. Reasons for any cost in excess of five cents (5¢) per acre shall be furnished by the state forester upon demand to any property owner whose lands are subject to protection costs in excess of the specific amount prescribed in this act. Any amount so paid or contracted to be paid by the state forester together with a penalty of ten (10) per cent thereof shall be a lien upon the property, and shall be reported by the state forester to the county court of the county in which such lands are situated, and shall by such court be levied and

collected with the next taxes on such lands in the same manner and with the same interest, penalty and cost charges as apply to ad valorem property taxes in this state. Said county court shall instruct the proper officer to extend the amounts on the assessment roll in a separate column, and the procedure provided by law for the collection of taxes and delinquent taxes shall be applicable thereto, and, upon collection thereof, the county court shall repay the same to the state forester to be applied to the expenses incurred in carrying out the provisions of this act. * * *." O. C. L. A., § 107-243.

The portion of the statute which was held unconstitutional by the circuit court is that which was added to the law by an amendment adopted in 1935, (Laws, 1935, Chapter 356). Previous to that amendment the statute provided that: "Any amounts so paid or contracted to be paid by the State Forester, shall be a lien upon the property, * * *."

The 1935 amendment added the words, "together with a penalty of ten (10) per cent thereof" before the words "shall be a lien".

Plaintiffs contend that the provision of O. C. L. A., § 107-243 which requires the assessment, levy and collection of a penalty of ten per cent, in addition to the cost of furnishing forest patrol protection, constitutes an exercise of the power of taxation and as such is unconstitutional because it is not levied according to the rule of uniformity. Secondly, the plaintiffs contend that the provision for the ten per cent penalty is arbitrary and bears no reasonable relationship to the cost of protection and regulation which may be imposed upon the timber owner under the police power.

The constitution of Oregon provides that: "* * * all taxation shall be uniform on the same class of subjects within the territorial limits of the authority

levying the tax." Constitution of Oregon, Article I, Section 32.

■ The constitution also provides: "No tax shall be levied except in pursuance of law and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied." Constitution of Oregon, Article IX, Section 3. These provisions however apply only as limitations upon the exercise of the power of taxation. Neither provision is a limitation upon the power of the legislature to impose regulations under the police power. *Ellis v. Frazier,* 38 Or. 462, 63 P. 642, 53 L. R. A. 454; *Portland Van and Storage Co. v. Hoss,* 139 Or. 434, 9 P. (2d) 122, 81 A. L. R. 1136; *Miller v. Henry,* 62 Or. 4, 124 P. 197, 41 L. R. A. (N. S.) 97. 1 Cooley, Taxation (4th Ed.) § 29.

■ If the challenged portion of O. C. L. A., § 107-243 was enacted as an exercise of the taxing power, it would be invalid for, as such, it would be violative of the constitutional requirement of uniformity. It is therefore apparent that the ultimate question for decision is whether the so-called ten per cent penalty is imposed pursuant to the police power or as a tax. While the name given by the legislature is of significance in determining whether an act is passed pursuant to the police power or to the power of taxation, it is nevertheless true, as urged by plaintiffs, that the primary purpose of a statute determines whether it is enacted pursuant to the one or the other power.

"The distinction between a demand of money under the police power and one made under the power to tax is not so much one of form as of substance. The proceedings may be the same in the two cases, although the purpose is essentially different. The one is made for regulation and the other for revenue. If for regulation, it is an exer-

cise of the police power while if for revenue it is an exercise of the taxing power. If, therefore, the purpose is evident in any particular instance, there can be no difficulty in classifying the case and referring it to the proper power. * * *

"* * * If revenue is the primary purpose, the imposition is a tax. Only those cases where regulation is the primary purpose can be specially referred to the police power. If the primary purpose of the legislative body in imposing the charge is to regulate, the charge is not a tax even if it produces revenue for the public. * * *"

1 Cooley, Taxation (4th Edition) § 27. See also § 37.

The plaintiffs concede the validity of the basic forest patrol assessment as imposed by the statute prior to its amendment in 1935. The attack is directed only at the penalty provision.

The validity of the original act which imposed a lien upon the property of the delinquent timber owner in the amount of the cost to the state of the fire patrol furnished, was upheld by this court in *First State Bank v. Kendall Lumber Co.*, 107 Or. 1, 213 P. 142. We quote:

"The general object and purpose of this act was to prevent the destruction by fire of the forest lands within the state. To accomplish this purpose all private owners of forest lands are required by this act to maintain a fire patrol over their lands during the dry season of each year. Recognizing that some timberland owners might not comply with the law, the legislature properly included in the act a provision whereby, through the state forester, a system of patrolling such private lands could be maintained at the expense of the delinquent land owner, and provided a method whereby this expense could be collected from such owner. As the means

thus adopted tended to prevent the destruction of forests by fire, and was essential to the accomplishment of the purpose of the act, it was proper to include this provision in the act. Without some such provision, obedience to the law could not be enforced. Where a statute contains a command and prescribes a penalty for its violation, there is a direct connection between the two, and neither can be said to be foreign or incongruous to the other. * * *

"* * * The money which the state forester, by this act, is directed to expend, belongs to the state, and, when collected, is repaid to the state. This statute was not designed for the purpose of raising revenue, and its enactment was not an exercise of the taxing power of the state. The act is a reasonable and proper police regulation designed to protect the forests of the state from destruction by fire. The method adopted by the legislature to compel the delinquent owner to reimburse the state for the moneys so expended provides merely for the collection of an indebtedness imposed under the police power of the state, and not for the collection of a tax." *First State Bank v. Kendall Lumber Co.,* supra.

On the face of the statute it appears that the ten per cent penalty was imposed for the same purpose as that expressed in the act prior to the 1935 amendment, and for the identical purpose set forth by this court in the Kendall case. It is provided in the act that the entire sum, cost and penalty, "upon collection" shall be repaid to the state forester "to be applied to the expenses incurred in carrying out the provisions" of the act.

It may be argued that the assessment of cost of protection when collected will fully reimburse the forester without recourse to the penalty and that therefore the penalty provision must have been imposed for

revenue and not for regulation. We think that position untenable. The normal assessment (exclusive of penalty) which can be imposed against the property of the owner is limited to the cost of providing "such protection", i.e., "adequate protection", as defined in O. C. L. A., § 107-241, not to exceed five cents per acre per annum, or in event of unusual hazard such assessment may be the amount of the "expense sufficient properly to safeguard timber resources" but "shall not exceed actual cost of work performed." These provisions do not in themselves necessarily establish that the forester can be made whole by enforcing the assessment exclusive of penalty. It will be observed that the statute provides in broad general terms that the fund derived from the collected cost of work performed and from the ten per cent penalty is to be "applied to the expenses incurred in carrying out the provisions" of the act. We may well assume that such expenses will exceed the actual cost of work performed and that the proceeds from the imposition of the ten per cent penalty may at times be required in paying expenses incurred. The statute itself provides that in times of unusual hazard the forester must make an investigation of need before authorizing additional expense sufficient properly to safeguard timber resources. Such investigation may involve expense prior to the time when any amount is paid or contracted as the actual cost of work performed. There may be other expenses, as for example, the cost of collecting the assessments from the property owner, which could not properly be classified as any part of the actual cost of work performed.

Our conclusion is that the proceeds from the ten per cent penalty are merged with the proceeds from the collected cost of protection in a single fund and

the entire fund is devoted without distinction to the one purpose specified. Whether is was necessary that the proceeds from the ten per cent penalty be so devoted is a different question.

The statute relating to forest patrol assessments and penalties clearly indicates its character as a regulatory measure under the police power. It first imposes a duty upon the timber owner and then provides that in the event that the owner shall fail or neglect to perform that duty, the necessary work will be done by the state and the cost, plus a penalty will be collected from the owner.

Subject to constitutional regulations, it is held that:

"The power of the state to impose penalties for violations of its statutory requirements is coeval with government. The prescribing of such penalties is a legislative function. Penalties have frequently been imposed to insure the performance of duties or conduct required by the state in carrying out its various sovereign functions, which functions are accomplished by the usual method of legislation. Thus, a legislature may impose any penalty it sees fit for the violation of valid regulations, and there is no inhibition upon a state to impose such penalties for disregard of its police regulations as will insure prompt obedience to the requirements of such regulations." 23 Am. Jur., Forfeitures and Penalties, § 32.

"* * * in its narrower sense a penalty is the amount recovered for a violation of the statute law of the state or a municipal ordinance which violation may or may not be a crime; * * * 25 C. J., Fines, Forfeitures and Penalties, § 3.

In *First State Bank v. Kendall Lumber Co.*, supra, this court expressly stated that the act, prior to the 1935 amendment was an exercise of the police power to compel the delinquent owner to reimburse the state

for moneys expended. The same reasoning applies to the ten per cent penalty. The following language from the Kendall case is peculiarly applicable to the penalty provision: "Where a statute contains a command and prescribes a penalty for its violation, there is a direct connection between the two, and neither can be said to be foreign or incongruous to the other."

In the case of *Borough of Wilkinsburg v. Home for Aged Protestant Women,* 131 Pa. 109, 18 A. 937, 6 L. R. A. 531, the plaintiff was a municipal corporation and the defendant was a corporation whose property had been declared by law to be free from taxation. The plaintiff had, by resolution, directed the defendant to replace a decayed footwalk adjoining the defendant's land. Upon failure of the defendant to do so, the plaintiff proceeded to build a new walk and then, in accordance with statute, filed its claim against the property for the amount of labor and material used in the construction of the walk, together with a twenty per cent penalty. The supreme court of Pennsylvania said:

"If the charge for laying this footwalk is a tax, or a municipal assessment in the nature of a tax, we are of the opinion the borough cannot recover. This principle was expressly ruled in Cemetery Co. v. City of Philadelphia, 93 Pa. St. 129. In that case the company was exempted by its charter 'from taxation except for state purposes'; a sewer was constructed on a street along the line of which were a number of burial lots; and an assessment was charged against said lots to defray, in part, the cost of the sewer. This was held by this court to be a species of local taxation, and within the exemption claimed by the charter. The defendant contends that this footwalk comes within the reason of the case cited, and that the charge for its con-

struction is also a species of local taxation. We think there is a marked distinction between the two cases. In the case of borough footwalks the owners of property are required by law to keep their footways in repair, and, if necessary, relay them. This is a duty passed directly upon the property owner, and is in the nature of a police regulation. It is no more a tax, or a municipal assessment in the nature of a tax, than would be the imposition of any other duty by virtue of the police powers of the borough, with a penalty for its violation. This footway was a public nuisance, dangerous in its character, and the fact that the defendant is a charity, and exempt from taxation, does not authorize it to maintain a nuisance. It could be required to abate it precisely as in the case of any other corporation or individual. In the cemetery case there was no police or other duty cast upon the company. It was not required to build the sewer. It was constructed by the city under its power for that purpose, and the cost thereof charged to the property owners in pursuance of a recognized system of municipal assessments. Such assessments have been repeatedly held to be a species of taxation." *Borough of Wilkinsburg v. Home for Aged Protestant Women,* supra.

The judgment for the plaintiff municipality which imposed the cost plus the penalty upon the defendant corporation was affirmed.

■ The case is directly in point. The opinion aptly illustrates the distinction between the assessment in the case at bar and assessments for benefits. The statute providing for the collection of cost and penalty in the pending case differs essentially from statutes imposing a license fee to cover costs of inspection or examination, and it also differs from a fee imposed for the granting of a privilege, the exercise of which requires regulation. In the case of money collected

from license fees imposed under the police power to cover costs of inspection, examination or regulation, only incidental surplus revenue is available for general fund purposes. The amount of the license fee which may be exacted is controlled, except as above stated, by the estimated cost of the inspection or regulation. *Hickey v. Riley*, 177 Or. 321, 162 P. (2d) 371.

■ The proceeds resulting from the enforcement of a penalty imposed for the failure to perform a legal duty stand upon a different basis. The lien upon the timber land of the owner is not imposed as the cost of a privilege granted him nor is it an assessment for benefits. It is the first step in a procedure established by law to compel "a delinquent owner to reimburse the state for moneys so expended", and "it provides merely for the collection of an indebtedness imposed under the police power of the state". *First State Bank of Sutherlin v. Kendall Lumber Co.*, supra.

If the proceeds from the penalty clause should be considered separately as plaintiffs apparently suggest, then there would be no limitation as to the application of them. They could be applied to the cost of fire protection or placed in the general fund in the first instance, or they could be first placed in a special fund and then transferred to the general fund. Such proceeds are often appropriated to the school fund.

"The rule is well settled that the mode in which penalties shall be enforced, whether at the suit of an individual or at the suit of the public, and the disposition that shall be made of the amounts collected are merely matters of legislative discretion. * * * " 23 Am. Jur., Forfeitures and Penalties, § 48.

■ Even in the case of a regulatory license, though the estimated cost of regulation imposes limitations

upon the amount which can be charged, we know of no rule that requires that the license fees should be kept in a separate fund.

It is argued that the ten per cent imposition is not a penalty because the land owner has no discretion, yet plaintiffs admit that if the owner joins a fire patrol association, that would constitute compliance with the mandate of O. C. L. A., § 107-241, and would relieve the owner from any assessment under O. C. L. A., § 107-243, either for cost or for penalty. So far as appears from the statute there may be other methods by which an owner may provide adequate protection and thereby exempt himself from all imposition under O. C. L. A., § 107-243.

■ It is contended that the requirements for furnishing adequate fire protection are so great that an individual land owner could not conform. There is no pleading to that effect, and we cannot take judicial notice of any such condition. Furthermore, plaintiffs are not in a position to urge the case of any such land owner if there be one. Counsel for plaintiffs was asked if there was any pleading or evidence showing that the plaintiffs could not have joined some fire patrol association, thereby exempting themselves from the provisions of O. C. L. A., § 107-243. Counsel answered, "no, and there was an organization which they could have joined." Thus it is clear that the plaintiffs had a statutory duty which they could have performed but failed to perform, and they thereby became liable to a penalty provided by law for such failure.

If in some other case it should appear that a penalty was exacted from some owner who could not have complied with the requirements of O. C. L. A., § 107-241, consideration might be given to the rule set forth in

*Chesapeake and Ohio Railway Company v. Board,* 100
W. Va. 222, 130 S. E. 524, 44 A. L. R. 826. In that case
it was held that when a duty is imposed by law and
its performance becomes impossible because of the
intervention of a vis major, there can be no recovery
of a penalty for its breach.

The plaintiffs contend that the essential character
of the penalty provision cannot be determined from the
internal evidence of the statute alone. They argue that
chapters 355 and 356 of the Laws of 1935, (respectively,
O. C. L. A., §§ 92-211 and 107-243), are companion acts
and must be considered together. Examination of the
Session Laws of 1935 shows that the "Tithing Act,"
chapter 355, and the act imposing the ten per cent
penalty, which we have just discussed, chapter 356,
were each approved by the Governor and filed on the
18th day of March 1935. The "Tithing Act," so far
as material here, provides:

> "The ratable portions or percentages herein-
> after specified of all moneys collected or received
> by the state officer, officers, activities, boards and
> commissions hereinafter named for fees, fines, li-
> censes and taxes, or any thereof, all and every part
> of which is not by the statutes imposing or authoriz-
> ing the same made a part of the general fund of the
> state and available for the payment of the general
> expenses of the state, shall when such moneys are
> paid to the state treasurer by such officers, activ-
> ities, boards and commissions be by the said state
> treasurer transferred to the general fund of the
> state, and as to any of said moneys which may be
> authorized by law to be kept and disbursed other
> than by and through the state treasurer, such ratable
> portions or percentages shall be paid to the state
> treasurer by the officer, officers, activities, boards
> and commissions receiving such moneys at the time
> when they are received by him or them and shall

be by the state treasurer credited to and made a part of the general fund of the state. The state treasurer in receipting for any of such moneys shall make his receipt in duplicate, showing the amount credited to the general fund as well as the amount credited to any special fund, and shall file one (1) of such duplicates with the secretary of state. Such payment and transfer to the general fund shall be made, notwithstanding any law which appropriates said moneys or any of them to any other purpose or purposes, and such portion or percentage shall not be subject to any special use or uses thereby provided. The portion or percentage of such moneys which is hereby required to be transferred to the general fund of the state shall be ten (10) per cent of all gross receipts of each of such officers, activities, boards and commissions, until the total of such respective gross receipts reaches the sum of one hundred thousand dollars ($100,000) in any fiscal year, and thereafter for the remainder of such fiscal year such portion or percentage so transferred shall be three (3) per cent of all gross receipts received by any such officer, officers, activities, boards and commissions, respectively. The officer, officers, activities, boards and commissions to which this act shall apply are as follows:

"  *  *  *  State board of forestry:

"Forest Patrol assessments, excluding federal contributions. * * *". O. C. L. A., § 92-211.

The plaintiffs appear to assume that the proceeds of the ten per cent penalty as such, are diverted to the general fund by the Tithing Act. Such is not the case. If the actual cost of work performed by the forester was $100, a ten per cent penalty would be added and a total of $110 would be assessed against the property. The total proceeds resulting from the enforcement of the assessment are applied to defraying expenses incurred in carrying out the provisions

of the act. That total would constitute the "gross receipts" referred to in the Tithing Act, and ten per cent of $110, or $11 would be transferred as a tithe to the general fund. Thus, it is possible, if the gross receipts of the State Board of Forestry in any one year should not exceed $100,000, that the tithe might exceed the amount of the penalty separately considered. On the other hand, the statistics cited by the plaintiffs show that the gross receipts of the State Board of Forestry from assessments, regularly exceed $100,000 a year, with the result that the tithe for the balance of the year after the gross receipts reach $100,000, is figured at three per cent only. The result has been that the tithe, figured for an entire year, is normally much less than ten per cent of the gross receipts and less than the amount of the proceeds from the collection of the penalty if that should be treated as a separate item.

The plaintiffs are confronted with a dilemma. If the tithe be considered as produced by, and taken exclusively from the proceeds of the penalty, then it is diverted from moneys which could have been placed in the general fund in the first place. If the tithe is taken from the gross receipts, all of which are devoted to the paying of expenses of administering the fire patrol act, then it bears no direct or constant relation to the penalty provision. Upon the latter assumption, the Tithing Act, as applied to forest patrol assessments, stands upon the same legal basis as it did before 1935.

It is true that the two acts were companion pieces, but the inference from that fact is weakened when the history of the legislation is examined. In the year 1933 there was an attempt to subject forest patrol funds to a tithing act. Chapter 405 of the session laws of that year provides for a tithe of ten per cent of the

gross receipts of state agencies enumerated therein, where such receipts did not exceed $75,000 a year, and included among the enumerated agencies we find the "State board of forestry: Forest patrol fees, excluding federal contributions."

As said by counsel for plaintiffs:

"The Tithing Act in 1933 was intended to apply to the forest patrol fund but probably through some error the act was so framed that it did not catch the forest patrol fund. The particular section limited it to funds [not ?] in excess of $75,000 so it was not caught by the Tithing Act."

The legislative purpose to subject forest funds to tithing was thus expressed two years before the penalty clause was added to the forest patrol act.

■ The Tithing Act imposes exactions from twenty-four different officers, activities, boards or commissmissions in the state of Oregon. Its validity is challenged only in its application to forest patrol funds. If, as we believe, the act is valid in its twenty-three other applications, we find no reason to invalidate it on account of the addition of the penalty clause in the case of forest assessments.

The gross receipts from the enforcement of the lien are devoted to forest patrol purposes. If there is an incidental surplus, it may be used for any purpose. If, as is more likely, the taking of the tithe reduces the fund below the amount necessary to defray "the expenses incurred in carrying out the act", then the tithing becomes largely a matter of form. Money would first be taken out of a special, and placed in the general fund, and then money would have to be appropriated from the general fund to cover the unpaid expenses incurred under the fire patrol law. We

observe that in 1947 there was an appropriation from the general fund for the Oregon State Board of Forestry in the amount of $500,791 for salaries and wages, and $140,165 for general, operating and maintenance expenses. Laws, 1947, chapter 452.

■ We see no merit in the contention that chapter 356, Laws, 1935, (O. C. L. A., 107-243) is invalid for want of a proper title. The imposition of the ten per cent penalty was germane to the subject of the original legislation which was entitled, "An Act to require owners of timber lands to provide a fire patrol therefor." Laws, 1913, chapter 247.

The judgment and decree of the circuit court is reversed and the suit is dismissed.

ROSSMAN, C. J., dissenting.

I am convinced that the 10 per cent exaction which the majority opinion deems a penalty is not a penalty. Neither of the parties to this cause regard the 10 per cent charge as a penalty. The case was submitted to us by the parties upon the premise that the 10 per cent exaction is non-penal in character. The Attorney General's brief, referring to the 10 per cent charge, says:

"The use of the word penalty is obviously a misnomer or an unwise selection of a word, for wherein is the 10 per cent any more of a penalty than the other fees or charges imposed under the act?"

The Attorney General regards the 10 per cent charge as the same in character as the charge of five cents per acre made by the State Forester for providing fire protection. I shall shortly quote his reasons. The respondents, of course, do not deem the charge a penalty. They regard it as a tax. In view of the

fact that the Attorney General conceded that it was not a penalty, and the respondents regarded it as a tax, the decision that it is a penalty has not been preceded by any argument upon that phase of the case. The trial judge, in a memorandum opinion, said: "The so-called 10 per cent is not a penalty." The majority, without assigning any reason for their interpretation of the nature of the charge, hold that it is a penalty. I do not concur in that view.

As I shall later show, the nature of the 10 per cent charge is important. There are three possibilities: (1) it is a tax, as the respondents contend; (2) it is a penalty, as the majority hold; or (3) it is a charge for service rendered by the State Forester. There are many instances of charges made by the governmental bodies for advantages which they bestow upon the citizen; for instance, a sawmill proprietor who buys timber from the state pays for it; a rancher who is permitted to pasture livestock in a forest preserve pays for the privilege. No one deems those payments as penalties.

If the 10 per cent charge is a penalty, the legislature, in writing the act before us (chapter 356 of 1935 Oregon Laws, now § 107-243, O. C. L. A.), certainly chose a most illogical part of the act in which to insert the provision about the penalty. Generally, statutes which impose penalties place the latter in the same sentence or paragraph which delineates the forbidden act or conduct; that is, generally, penal statutes, after prohibiting a specific course of conduct, say that any one who violates the prohibition shall be penalized with the penalty which the next part of the act sets forth. This act does nothing of that kind. Its forerunner (1913 Oregon Laws, chapter 247) authorized the State

Forester to provide fire protection for timberland at a cost of not to exceed five cents per acre and said:

> "Any amount so paid or contracted to be paid by the state forester, shall be a lien upon the property, and shall be reported by the state forester to the county court of the county in which such lands are situated, and shall by such court be levied and collected with the next taxes on such lands * * *."

The part of the 1935 act which the majority say added a penalty to that statute inserted after the words "Any amount so paid or contracted to be paid by the state forester" the following: "together with a penalty of ten (10) per cent thereof." No other part of the act says anything about a penalty; nor does any part of the act mention any wrong for which a penalty is imposed. In other words, the purported penalty is set forth in this statute in the part which makes provision for the collection of the forester's charges for fire protection. The very fact that it would be novel to insert in that place a provision for a penalty is a strong indication that the exaction is not a penalty.

The only reason which can be given, so I believe, for saying that the 10 per cent exaction is a penalty is that the statute uses that word. But the instances are legion in which courts declined to place upon words their normal meaning or disregarded a word. The rule is stated in *Fox v. Galloway,* 174 Or. 339, 148 P. (2d) 922, and *State v. Gates,* 104 Or. 112, 206 P. 863. The following is taken from Cooley on Taxation, 4th ed., § 37:

> "Whether an imposition is a tax cannot be determined by the name given it by the statute creating the imposition, although such name is entitled to some weight, it would seem, in determining the intention of the legislature. In other words, an im-

position is not a tax merely because the statute providing therefor calls it a tax. On the other hand an imposition may be a tax although the statute creating it refers to it as something else.''

If the words ''a penalty of'' upon which the majority depend are disregarded, the act will remain complete. As I shall presently show, those three words are unnecessary and are out of harmony with the purpose of the act. They should be disregarded.

Let us take note of the reasons given by the Attorney General for his belief that the 10 per cent exaction is not a penalty. That official has an intimate knowledge of legislative history. He announced his interpretation three years before this matter became involved in controversy. In May of 1944 the Attorney General was requested by the Interim Committee on Tithing for an opinion concerning the validity of the very act and charge now before us. He responded to the committee's request with a carefully prepared opinion, from which I now quote:

''The use of the word 'penalty' in the amendatory act is a misnomer, for the 10% increase is payable without regard to delinquency in the payment of assessments and partakes no more of the nature of a penalty than the assessments collected to meet the direct costs of fire protection under Article II, chapter 2, Title 107, O.C.L.A. In reality, the so-called penalty effected simply a blanket increase in the amount of the assessments. * * *

''The assessments rest upon the theory that a benefit is conferred upon the affected property. * * *

''There remains the question of whether the blanket 10% increase in the assessments * * * gives the law the character of a revenue rather than a police measure, * * *.

''It is recognized that any governmental activity, to some extent enhances the general expenses of

government. The exact amount of the added burden is, I assume, not susceptible to exact computation, but the principle is well settled that the legislature is not required to compute such matters with mathematical certainty. It would be presumed that the 10% payable to the general fund is reasonably proportionate to the increase in general expenses resulting from the fire protection program." Opinions of the Attorney General, 1942-1944, page 457.

As is indicated by the language just quoted, the Forester has not charged the owner of timberland the entire cost to the state of the fire protection which he furnishes when he has charged for only the out-of-pocket disbursements which he made in providing the protection. The Forester maintains lookout stations; he possesses fire-fighting equipment and maintains roads and trails. Implements and facilities of that kind entail investments and are subject to depreciation. Further, the Forester has an office force and over the Forester are superior officials. All of the foregoing enters into the cost of service rendered by the Forester. Let us resort to an example: If the Forester's charge is not paid and it is necessary to foreclose a certificate of delinquency, the district attorney performs that service with a resulting benefit in the long run to all owners of timberlands. It is reasonable that a fair part of this overhead should be deemed by the legislature a part of the cost of fire protection. In short, the Forester's out-of-pocket disbursements do not constitute the sole expense to the state for providing fire protection.

The opinion of the Attorney General from which I quoted gave a good explanation of why it was necessary in 1935 to increase the income of the State Forester by adding to the existing charge of five cents

per acre 10 per cent for overhead. I continue the quotation:

"Although the 10% increase is not earmarked for payment to the general fund I assume it was added to meet the tithe required by section 92-211 and thereby avoid impairment of the funds available for fire protection. The statute requires that the assessments be based upon actual cost of the service rendered and any diversion of the proceeds would be inconsistent with this statutory formula for determining the amount of the assessments. Consequently, the legislature avoided such an inconsistency by providing additional revenue with which to pay the tithe. The simultaneous enactment of chapters 355 and 356, Oregon Laws, 1935, fortifies this conclusion."

Section 92-211, O. C. L. A., to which reference is made in the quoted language is chapter 355 of 1935 Oregon Laws. It is the Tithing Law. Chapter 356 of 1935 Oregon Laws, to which the quotation also refers, is the very act we are now construing—it adds to the Forester's charge for fire protection ten per cent thereof.

The explanation just quoted shows why the 10 per cent exaction was added to the charge already authorized of five cents per acre. It shows clearly that the additional charge was not intended to be a penalty. The addition was made because (1) the charge of five cents per acre brought to the Forester a return of only the out-of-pocket disbursements which he made in providing fire protection; (2) the cost to the state of the fire protection was more than five cents per acre; and (3) the tithe levied by 1935 Oregon Laws, chapter 355 (§ 92-211, O. C. L. A.) took from the Forester 10 per cent of his charge of five cents per acre and, therefore, would have left him with only $ .045 per

acre —less than his actual disbursements, had not chapter 356 been simultaneously enacted.

As the Attorney General shows in the language above quoted, the Tithing Act (1935 Oregon Laws, chapter 355) which takes out of the Forester's receipts 10 per cent of their total, and the act which we are now construing (1935 Oregon Laws, chapter 356) which increased the Forester's charge 10 per cent, were passed on the same day. They were companion measures. It seems obvious that the legislature, after taking from the Forester for the benefit of the state's general fund 10 per cent of his charges for fire protection, wished to restore his funds to solvency and therefore authorized him to make a blanket increase of 10 per cent of his charges. Obviously, the purpose was not to penalize anyone. The sole purpose was to balance the Forester's accounts.

The decisions uniformly ascribe weight and cogency to the interpretation placed by executive officials upon statutes entrusted to their enforcement. For instance, as long ago as 1827 the Federal Supreme Court said:

"In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect." *Edwards v. Darby*, 25 U. S. 206. See also 42 Am. Jur., Public Administrative Law, §§ 77-85.

The reasons why contemporaneous administrative interpretation is entitled to respect are several in number. Generally, such officials as the attorney general and the administrative officers are intimately familiar with the problems to which the statute which they construed is applicable. Not infrequently those officials themselves drafted the measure and, there-

fore, knew its purpose. Those who deal with the state, its officials and agencies, regard as authoritative interpretations placed by the officials upon the statutes which they administer. In the present instance, since the interpretation which is before us was announced by the attorney general after a careful analysis by him of the act and the circumstances under which it was enacted, it should not be disregarded except for urgent reasons. None whatever have been called to this court's attention.

Notwithstanding all of the foregoing, the majority deem the 10 per cent exaction as a penalty. Normally, no one is penalized unless he has done a wrong. Let us see whether the act before us regards it as a wrong for an owner of timberland to look to the Forester for fire protection.

Section 107-241, O. C. L. A., which is a part of the legislation containing the 10 per cent phrase, says:

> "Every owner of timberland in the state of Oregon shall furnish or provide therefor, * * * adequate protection against the starting or spread of fire thereon or therefrom which shall meet with the approval of the state board of forestry."

Section 107-243 says:

> "In case any owner or owners shall fail or neglect to provide such protection against the starting or spreading of fire, then the state forester * * * shall provide the same at a cost of not to exceed five cents (5¢) per acre * * *."

That statute permits the owner to provide the fire protection himself or have the Forester provide it for him. *Carter v. LaDee Logging Co.*, 142 Or. 439, 18 P. 2d 234, 20 P. 2d 1086. The decision in that case, after setting forth the part of § 107-241, O. C. L. A., just quoted, expressly mentioned the part of § 107-243, above

quoted, which provides that in the event the owner does not himself provide the fire protection, the State Forester shall do so. The opinion then said that the timberland owner (Union Lumber Company, Ltd.) which the plaintiff claimed had failed to provide fire protection, had, in fact, paid the Forester for the protection which he had furnished for many years. The decision held:

"Therefore, no liability would attach to the Union Lumber Company, Ltd., by virtue of § 42-406, Oregon Code 1930, as such lands were, within the meaning of the statute, adequately protected."

Section 42-406, Oregon Code 1930, which is now § 107-208, O. C. L. A., renders inadequately protected forest land covered by inflammable debris a nuisance. It is clear from that decision that an owner who secures protection from the Forester has omitted nothing demanded of him. Upon accepting and paying for the fire protection afforded by the Forester he has met all requirements. After he has done so, there can be no basis for assessing a penalty against him. There is no more reason for assessing a penalty against him than there was in the Carter case for declaring his land to be a nuisance.

The precurser of the 1935 act was 1913 Oregon Laws, chapter 247. The latter did not include the 10 per cent clause and limited the charge to five cents an acre. No one deemed the latter charge a penalty. In *First State Bank v. Kendall Lumber Co.,* 107 Or. 1, 213 P. 142, which sustained the validity of the 1913 act, the charge was termed "an indebtedness imposed under the police power" and its size was held to be "the expense of the State Forester in patrolling" the land. Clearly, such a charge, based upon a *quid pro quo*, can not be a penalty. The 1913 act remained

unchanged for 24 years, and then came the 1935 amendment. The sole addition made to the existing law by the 1935 amendment is the following: "together with a penalty of ten per cent thereof." For emphasis, I state that the 1935 amendment made no other change whatever. The amendment certainly delineates no wrong. If the 10 per cent exaction is the imposition of a penalty for a wrong, it is impossible to know what statute created the wrong. To make matters clear, attention is directed to the fact that the 10 per cent exaction is not assessed against only those timberland owners who fail to pay the five cents an acre, but it, like the five cents per acre charge, is exacted of every owner of timberland who does not himself provide fire protection. Since *Carter v. LaDee Logging Co.*, supra, holds that an owner who accepted and paid for fire protection furnished by the Forester has met all of the requirements of the act, there can be no basis for penalizing him. The act does not render it wrong for an owner to accept fire protection furnished by the Forester.

Surely the majority do not intend to hold that in order to enrich the general fund a person who has done no wrong and who is not delinquent in meeting any demand made of him by the state, can be penalized.

A determination of the true character of the 10 per cent charge is important. In the first place, the majority employ the penalty conception as the basis for sustaining the charge. I shall now proceed to show other reasons. In the year which ended June 30, 1947, the State Forester paid into the general fund $34,813.12 as tithes. That is a substantial amount of money. Its size may cause someone to propose additional legislation, based upon the clause which is the crux of this case, and seek thereby to increase the state's revenue. They may infer that there is magic in the use of the

word "penalty" and employ it as the basis for new exactions.

If the sum paid by a state agency as a tithe can be deemed a contribution to overhead, it can be sustained, I assume, if reasonable in amount. If the purpose of the tithe is to make a fair contribution to overhead, reason becomes the gauge which determines the amount, and reason thereupon protects the citizen from being compelled to make an unreasonable contribution towards the total taken by the tithe. But, if the majority are right, and if the exaction in the instant case is a penalty, who can say that an exaction required by other legislation will be illegal if it is, say, $1.00 or $5.00 an acre? In other words, if a timber owner, who avails himself of the privilege afforded by the statute of having the State Forester provide fire protection for his land, can be assessed a penalty of 10 per cent, I know of no reason why he can not be penalized a much larger amount. Penalties imposed by legislative mandate normally are not subject to judicial review.

I deem it unnecessary to set forth my views upon other phases of this appeal.

I dissent.