## FARMERS INSURANCE GROUP v. COMMISSIONER OF TAXATION.

153 N. W. (2d) 236.

September 29, 1967—No. 40,257.

*Murnane, Murnane, Battis & deLambert* and *Thomas J. Battis,* for relator.

*Douglas M. Head,* Attorney General, and *Jerome J. Sicora,* Assistant Attorney General, for respondent.

OTIS, JUSTICE.

This matter is before the court on a writ of certiorari to review a decision of the Tax Court confirming an order of the commissioner of taxation which imposes an assessment of 2.35 percent of gross premiums against three California reciprocal insurance exchanges under Minnesota's retaliatory statute, Minn. St. 71.23. The issue is whether the provisions of §§ 60.515 and 60.518 governing reciprocal or interinsurance exchange contracts preclude the application of the retaliatory statute.

The facts are not in dispute and have been embodied in a stipulation of the parties. The three relators are reciprocal or interinsurance exchanges organized under the laws of California. In the 20 years since its enactment the commissioner of taxation for the first time in 1960 levied assessments against them under § 71.23 in the sums of $8,961.86 as to Farmers Insurance Exchange; $1,559.70 as to Truck Insurance Exchange; and $395.68 as to Fire Insurance Exchange. These amounts represent 2.35 percent of gross premiums, the rate fixed under California law for exchanges doing business in that state, or an increase of .35 percent over the base rate established by Minnesota law for exchanges doing business here. In the year 1960, no Minnesota reciprocal companies were doing business in California.

In essence, relators argue that the unique character of reciprocal in-

surance companies has been recognized by both the legislative and executive branches of the government in. Minnesota, and that statutes such as § 71.23 were not intended to apply to reciprocal companies.[1]

The nature and purpose of reciprocal companies have been fully discussed elsewhere.[2] Suffice it to say that they originated some 85 years ago as a result of efforts by various low-risk businesses to effect economies in casualty insurance through mutual self-insurance within a particular business or industry. Individual companies contracted with one another to insure against fire and other losses and became both the insurer and the insured. The fixing of rates, collection of assessments, and payment of losses were delegated to an attorney in fact. The contracts contemplated no profits to those participating.

These arrangements were characterized by Judge Sanborn in In re Minnesota Ins. Underwriters (D. Minn.) 36 F. (2d) 371, 372, as creating "something more than a partnership and something less than an insurance corporation."[3] Relators liken such reciprocal nonprofit organizations to cooperatives, and argue that the retaliatory statute was therefore not intended to apply to them.

■ Section 60.02, subd. 4, defines an insurance company as "every corporation, business trust, or association engaged in insurance as prin-

---

[1] Relators point out that the legislature expressly included reciprocals and interinsurance exchanges in imposing a fire marshal tax under Minn. St. 73.20.

[2] Hoopeston Canning Co. v. Cullen, 318 U. S. 313, 63 S. Ct. 602, 87 L. ed. 777; Mitchell v. Pacific Greyhound Lines, 33 Cal. App. (2d) 53, 59, 91 P. (2d) 176, 180; Annotation, 94 A. L. R. 836.

[3] The court succinctly described the origin of reciprocal or interinsurance exchanges as follows: "* * * Certain groups of individuals had found this plan an economical and practical method of providing indemnity. One man might not be sufficiently strong financially to bear the risk of loss alone, but he and a number of his friends and acquaintances or others engaged in the same line of business could form a group or association abundantly able to act as their own insurers, and thus procure insurance at or near its actual cost. This scheme of insurance was peculiarly attractive to those owning what are generally known in the insurance world as 'preferred risks,' where the danger of loss is small. Its growth and popularity resulted in the uniform acts which are now found in most of the state statutes." 36 F. (2d) 372.

cipal." Section 60.515 authorizes insurance companies to exchange contracts in the following language:

"Any corporation now or hereafter organized under the laws of this state shall, in addition to the rights, powers, and franchises specified in its articles of incorporation, have full power and authority to exchange insurance contracts of the kind and character herein mentioned. The right to exchange these contracts is hereby declared to be incidental to the purposes for which the corporations are organized and as much granted as the rights and powers expressly conferred.

"*Except as herein provided, no law of this state shall apply to the exchange of these indemnity contracts.*" (Italics supplied.)

It is the contention of relators that the last sentence of the quoted statute exempts reciprocal companies from all of the other provisions of law except those contained in §§ 60.511 through 60.518, citing as authority Gisin v. Farmers Auto. Inter-Insurance Exch. 219 Iowa 1373, 261 N. W. 618. We do not read the statute that broadly and concur in the decision of the Kentucky court in Standard Auto Ins. Assn. v. Henson, 201 Ky. 230, 235, 256 S. W. 414, 417, where much the same argument was advanced. The court there concluded:

"A reference to the two sections quoted, *supra,* and to the entire act, section 743m-1-12, indicates that the word 'exchange' as used therein means that the classes of persons therein named may *issue and deliver* to each other, and to others of the same class, reciprocal or interinsurance contracts, and the restrictions and limitations placed by the insurance laws of the state upon the *issuance* and *delivery* of other forms of insurance shall not apply to the 'exchange,' that is, *issuance* and *delivery* of this form of insurance."

Oregon reached a similar result in Whitlock v. United States Inter-Insurance Assn. 138 Ore. 383, 392, 6 P. (2d) 1088, 1091. In other words, it seems to us that it was the intent of the legislature to limit the exemption set forth in § 60.515 to other statutes which were in conflict or imposed an additional burden on the *creation* of interinsurance in-

demnity contracts. Although the statute is not entirely clear, we construe it to be an attempt to treat with the terms and conditions of reciprocal insurance contracts in a single chapter. It does not broadly exempt the application of other statutes which regulate ordinary insurance companies or which apply in areas where the state may properly exercise its police power to protect the public or promote Minnesota's insurance industry as a whole. We therefore conclude that § 60.515 does not preclude the application of the retaliatory provisions of § 71.23.

■ Section 60.518 provides as follows:

"This attorney, *in lieu of all taxes, state, county,* and municipal, shall pay to the state with the filing of each annual report on or before March 1 as an annual license *fee two percent of the gross premiums or deposits* for the preceding calendar year, deducting all amounts returned to subscribers or credited to their accounts; and he shall pay a filing fee of $2. If unpaid March 1, annually, a penalty of ten percent shall accrue thereon and thereafter such sum and penalty shall draw interest at the rate of one percent per month until paid." (Italics supplied.)

The question arises as to whether § 71.23 imposes a "tax" within the meaning of § 60.518.[4]

We have recently discussed the purpose and effect of the retaliatory statute in Republic Ins. Co. v. Commr. of Taxation, 272 Minn. 325, 330, 138 N. W. (2d) 776, 779. Among other things, we there stated:

---

[4] Minn. St. 71.23, subd. 1, provides as follows: "When by the laws of any other state or country any taxes, fines, deposits, penalties, licenses, or fees, in addition to or in excess of those imposed by the laws of this state upon foreign insurance companies and their agents doing business in this state, are imposed on insurance companies of this state and their agents doing business in that state or country, or when any conditions precedent to the right to do business in that state are imposed by the laws thereof, beyond those imposed upon these foreign companies by the laws of this state, the same taxes, fines, deposits, penalties, licenses, fees, and conditions precedent shall be imposed upon every similar insurance company of that state or country and their agents doing or applying to do business in this state so long as these foreign laws remain in force."

"* * * These statutes are primarily regulatory, the taxing feature being regarded as incidental."

Our conclusion in Republic Insurance finds support in Commonwealth v. Firemen's Fund Ins. Co. 369 Pa. 560, 87 A. (2d) 255. There, in passing on the adequacy of notice given by the title to the Pennsylvania act, the court decided that the retaliatory provisions of its insurance laws were essentially regulatory and not revenue raising. In so holding, the court stated (369 Pa. 564, 87 A. [2d] 258):

"* * * It is certainly not a revenue raising measure. In fact, its success might be said to depend on how little is collected under its terms rather than how much. It is designed to bring about equality of treatment between domestic and foreign corporations and to break down interstate barriers. Such a purpose falls within the police power and is properly classified as a regulation of the insurance business under that power. It is in the same category as a license fee or other similar charges."

It has been said that the legislature's own designation is not necessarily conclusive of whether a provision of law is primarily for revenue or for regulation. Starker v. Scott, 183 Ore. 10, 16, 190 P. (2d) 532, 535. That court quoted with approval 1 Cooley, Taxation (4 ed.) § 27, p. 99, as follows:

"* * * If revenue is the primary purpose, the imposition is a tax. Only those cases where regulation is the primary purpose can be specially referred to the police power. If the primary purpose of the legislative body in imposing the charge is to regulate, the charge is not a tax even if it produces revenue for the public." [5]

We subscribe to the views expressed in these opinions and hold that § 71.23 is not primarily intended as a revenue-producing statute but is designed to discourage other states from imposing a burden on Minnesota insurance companies greater than that levied by this state on companies organized elsewhere and doing business here.

In reaching this conclusion we are influenced by the fact that no

---

[5] See, also, Scott v. Donnelly (N. D.) 133 N. W. (2d) 418, 423.

reason has been suggested for the legislature's being more solicitous of ordinary insurance companies than of reciprocal companies. On the contrary, it occurs to us that cooperative enterprises created by exchange contracts are entitled to as much protection from unequal taxation imposed by foreign states as are other insurance companies. Were we to adopt a different position, Minnesota exchanges doing business in California would labor under a burden in that state not imposed by us on California exchanges doing business in Minnesota. Absent some persuasive consideration of policy not called to our attention, we do not ascribe to the legislature a purpose having no apparent rational basis.

We have considered the other arguments advanced by relators but do not deem it necessary to accord them extended discussion.

Affirmed.