INDIANA DEPARTMENT OF REVE-
NUE, Defendant-Appellant,

v.

AMERICAN UNDERWRITERS, INC.,
Plaintiff-Appellee.

No. 2-680A191A.

Court of Appeals of Indiana,
First District.

Dec. 29, 1981.

Rehearings Denied Feb. 23, 1982.
See 431 N.E.2d 528.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant Indiana Department of Revenue (Department) appeals a judgment upon a bench trial entered in the Marion Circuit Court in favor of plaintiff-appellee American Underwriters, Inc. (A–U) on its complaint for refund of $330,976.56, which amount represents an overpayment of Indiana corporation income taxes, a penalty assessed thereon, plus interest.

We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

To properly assess the contentions of the parties it is necessary to understand the type of organizations involved and how the business of interinsurance is conducted. A–U is an Indiana corporation expressly organized for the purpose of acting as attorney-in-fact for the American Interinsurance Exchange (Exchange), an interinsurance or reciprocal insurance business. The statutory authorization for interinsurance or reciprocal insurance is contained in Ind. Code 27–6–6–1, as follows:

> "Individuals, partnerships and corporations of this state, hereby designated 'subscribers,' are hereby authorized to exchange reciprocal or interinsurance contracts with each other or with individuals, partnerships and corporations of other states and countries, providing indemnity among themselves from any loss which may be insured against under the fire or casualty classifications as authorized by the insurance laws of this state, except title insurance."

Ind.Code 27–6–6–2 provides, in part, that

> "Such contracts may be executed by an attorney, agent or other representative, herein designed 'attorney,' duly authorized and acting for such subscribers."

Ind.Code 27–6–6–9 provides that the Insurance Department shall issue a certificate of authority or a license to the attorney-in-fact authorizing it to make such contracts of insurance. The certificate shall include the

Linley E. Pearson, Atty. Gen., Ted J. Holaday, Russell T. Clarke, Jr., Deputy Attys. Gen., Indianapolis, for defendant-appellant.

Robert E. Johnson, Paul F. Lindemann, Krieg, Devault Alexander & Capehart, Indianapolis, for plaintiff-appellee.

name or designation under which the contracts of insurance are issued, which name shall be filed with the Insurance Department. Ind.Code 27–6–6–3.

It appears that A–U was incorporated by its stockholders prior to the existence of any subscribers for the purpose of writing high-risk fire, motorcycle, motor vehicle, and other sub-standard insurance. The subscribers, as referred to in the statute, are actually policyholders of insurance solicited by a force of 1,800 agents and brokers appointed by A–U, the attorney-in-fact. Those policies are nonassessable and indistinguishable from standard casualty policies except for the "Power of Attorney and Subscribers Agreement" (Agreement) which is contained therein. The Agreement grants plenary authority to A–U, as the subscribers' attorney-in-fact, to manage the insurance business of the Exchange in perpetuity. The liability of the policyholder or subscriber is limited to the payment of the premium, and liability is shared severally, not jointly, with the other subscribers. Pursuant to statutory authority the name or designation of "American Interinsurance Exchange" was selected by A–U and policies of insurance are written under that name. All business is conducted by A–U, as attorney-in-fact, for the policyholders or subscribers who collectively are called the "American Interinsurance Exchange." Under the style of the Exchange, A–U operates much the same as a mutual insurance company. Apart from the attorney-in-fact, the Exchange has no separate officers or organization, is not incorporated, has no articles of partnership, or other articles of agreement other than the Subscribers' Agreement. A–U, as attorney-in-fact, acting in the name of the Exchange, writes insurance, cedes reinsurance, makes investments and maintains an investment portfolio containing securities and real estate. The Exchange maintains separate accounts from A–U individually, is regulated by the Indiana Insurance Department, and sues and is sued in the name of the Exchange. The record discloses that A–U, individually, has made loans for as much as $1,200,000 to the Exchange to enhance the guaranty fund, and has taken the notes of the Exchange as security therefor. These notes can only be repaid upon authorization from the Insurance Department. The Exchange has a definite financial position, owns assets and liabilities, and derives its own income. Annual reports are issued by the Exchange, and the 1973 report describes it as "an association of individuals." A separate federal income tax return is filed for the Exchange pursuant to the Internal Revenue Code. A–U and the Exchange maintain separate payroll records and segregate their assets. Claims are adjusted, and bank accounts are kept in the name of the Exchange.

The interests of A–U and the Exchange are not coextensive. The Subscribers' Agreement grants A–U the right to take 15 percent of all monies received by the Exchange as a management fee which is A–U's sole source of income from the enterprise. The Agreement provides that A–U may dissolve the Exchange at will, and upon that event, after the payment of all liabilities, the assets remaining in the Exchange are to be distributed equitably to the subscribers or policyholders then existing. A–U is not entitled currently, or upon dissolution, to any part of the Exchange assets (except the management fee as it becomes due), nor is it liable for any losses incurred by the insurance operation for the reason that it is acting only as an attorney-in-fact. Conversely, the subscribers or policyholders have no interest in the assets of A–U; either the subscriber or A–U may, at will, terminate the policy of insurance. A–U has other interests besides the Exchange, namely, the wholly-owned subsidiaries of Atlas Leasing Corporation, Underwriters Realty, Inc., American Interinsurance Service, Inc. and American Underwriters Agency, Inc.

It is clear from the foregoing, that this insurance operation is not, as suggested by the statute, a situation where a group of individuals, partnerships, and corporations bind themselves together to insure and indemnify each other, and actually exchange reciprocal agreements to that effect

through an attorney-in-fact appointed by them. The essence of this insurance business is the creation by the attorney-in-fact of an insurance company which has certain characteristics of a mutual. It was conceded in oral argument that the most attractive feature for selection of this form of business enterprise was the limitation of liability to A–U for any losses incurred in writing high risk substandard insurance.

## ISSUES

The Department raises the following issues on appeal which we have restated as follows:

I. Whether the trial court erred in determining that A–U is the only taxpayer and that the Exchange is not a legal entity subject to Indiana taxes;

II. Whether the trial court erred in construing Ind.Code 27–6–6–12 to mean A–U is to pay the same taxes as required of mutual insurance companies;

III. Whether the trial court erred in finding that A–U is required to use the pro rata method in computing its reserves for tax purposes;

IV. Whether the trial court erred in finding that A–U was entitled to a refund of interest upon any amount paid for the tax years 1971, 1972, 1973, 1974 and 1975; and

V. Whether the trial court erred in finding that A–U is entitled to recover costs in this action.

## DISCUSSION AND DECISION

*Issues I and II. Taxability*

For the years 1971, 1972, 1973, and 1974, A–U had filed separate Indiana gross income tax returns for itself and the Exchange. The tax return of the Exchange included 100 percent of the premium payments and other income received by A–U as attorney-in-fact for the Exchange. The tax return of A–U, individually, included, as relevant here, only the 15 percent management fee received by it for its services as

attorney-in-fact for the Exchange. The theory of A–U's suit for the recovery of taxes erroneously paid, which suit is by A–U individually to recover the tax paid on the 15 percent management fee, is that the whole enterprise is one taxable entity, and A–U as attorney-in-fact is the only taxpayer obligated to file an Indiana tax return. A–U asserts that when it files a return as attorney-in-fact for the Exchange, it declares 100 percent of the premium and other income received by it, as attorney-in-fact, and the tax obligation of the single taxable entity is satisfied. Therefore, A–U argues, a second tax levied upon the 15 percent management fee received by A–U individually amounts to double taxation. A–U relies very heavily upon Ind.Code 27–6–6–12, a section of the interinsurance statute enacted in 1919, which is as follows:

"In lieu of all other taxes, licenses or fees, state or local, such attorney shall pay annually, on account of the transaction of such business in this state, the same taxes, licenses and fees as are required to be paid by mutual insurance companies with principal office similarly located and transacting the same kind of business. In the application of the retaliatory law, the taxes and fees exacted by another state from an exchange with principal office in Indiana shall apply."

The Department contends that A–U and the Exchange are two separate taxable entities and the Exchange is included in the definitional section of Indiana Gross Income Tax Act, Ind.Code 6–2–1–1(a), enacted in 1933, as follows:

"6–2–1–1 Definitions

... When used in this chapter, the term 'person' or the term 'company' herein used interchangeably, means and includes any individual, assignee, receiver, commissioner, fiduciary, trustee, executor, administrator, institution, national banks, bank, consignee, firm, partnership, joint venture, pool, syndicate, bureau, association, cooperative association, society, club, fraternity, sorority, lodge, corporation, municipal corporation or any other political subdivision of the state engaged

in private or [proprietary] activities or business, estate, trust, or any other group or combination acting as a unit, and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context." The Department asserts that when premium and other income is paid to A–U, as attorney-in-fact for the Exchange, such payment is one taxable event. Furthermore, when A–U pays to itself, individually, 15 percent of the income received as its management fee, such payment is a second taxable event.

Where a trial court has rendered findings of fact and conclusions of law, the Court of Appeals will not set aside the judgment unless it is clearly erroneous; furthermore, only evidence most favorable to the trial court's decision will be considered. The decision will be set aside only where evidence leads to but one conclusion and the trial court has reached another. Ind. Rules of Procedure, Trial Rule 52; *Boffo v. Boone County Board of Zoning Appeals*, (1981) Ind.App., 421 N.E.2d 1119.

This issue is one of first impression in Indiana. In support of its position, A–U cites cases describing the nature of an interinsurance exchange. In *Wysong v. Automobile Underwriters, Inc.*, (1933) 204 Ind. 493, 501, 184 N.E. 783, the Indiana Supreme Court, facing dissimilar facts to the case at bar, defined the interinsurance exchange business. The court said:

"Reciprocal or inter-insurance is not a statutory entity but only regulated by law. It is by private contract that the relations created among and between the subscribers are fixed and determined. And the policy issued by the attorney in fact and the power of attorney executed by each subscriber determines the rights and liabilities of the subscribers between themselves, providing that said power of attorney and the policy issued do not contravene the law of the state. *There must be an attorney in fact for the reason that under the plan of insurance in question all the business is done and transacted by an attorney in fact and an attorney in fact presupposes a power of attorney.*" (Emphasis added.)

In *McAlexander v. Waldbieser*, (1934) 207 Ind. 531, 534, 192 N.E. 425, our Supreme Court, citing to *Turner v. Henshaw*, (1927) 86 Ind.App. 565, 155 N.E. 222, characterized an interinsurance exchange as a "mere place of transacting business." In *Turner, supra*, at 575, 155 N.E. 222, the court held that the interinsurance exchange is not a corporation or legal entity of any kind, "being but a mere place ..." where subscribers exchange contracts of indemnity through their attorney-in-fact. *See State ex rel. Stone, Receiver v. United States Fidelity and Guaranty Company*, (1948) 119 Ind.App. 63, 78 N.E.2d 881.

A–U directs our attention to that portion of Ind.Code 27–6–6–12, set out above, which states that the "attorney shall pay annually ... the same taxes ... as are required to be paid by mutual insurance companies ...", and then argues that the imposition of a tax on the management fee would result in it paying a higher tax than that imposed on a mutual insurance company. A–U contends there is only one business being carried on, and the only reason two separate sets of accounts are kept is because of the mandate of the Internal Revenue Code, the Securities Exchange Commission, and the Indiana Department of Insurance and not because A–U considers there are two entities involved. It likens the Exchange's separate accounts to "cost centers." A–U further contends that the language in Ind.Code 27–6–6–12, which states "In lieu of all other taxes, licenses or fees, state or local, such attorney shall pay annually ..." renders one tax exclusive of all others.

The Department relies in part upon cases from other jurisdictions which, for some purposes, treat an interinsurance exchange as an entity apart from its attorney-in-fact. These cases are as follows: *Farmers Insurance Group v. Commissioner of Taxation*, (1967) 278 Minn. 169, 153 N.W.2d 236; *W. R. Roach & Co. v. Harding*, (1932) 348 Ill. 454, 181 N.E. 331; *California State Automobile Ass'n Inter-Insurance Bureau v.*

*Downey,* (1950) 96 Cal.App.2d 876, 216 P.2d 882; and *Mitchell v. Pacific Greyhound Lines,* 33 Cal.App.2d 53, 91 P.2d 176. The Department points out that A–U must file a separate federal income tax return for itself and for the Exchange. Separate accounts are kept; the Exchange is recognized by the legislature (Ind.Code 27–7–7–1); the Exchange has a defined financial position; it owns assets, and has income and liabilities. The attorney-in-fact has no equity in the assets of the Exchange, as those belong to the subscribers. A–U has no liabilities from the insurance business, no unassigned surplus and reserves, or net income or loss. The Department directs our attention to A–U's own 1973 annual report (Department's Exhibit D) in which it describes the Exchange as an "association of individuals". It is stated in the exhibit that "The Exchange, having no managerial organization of its own, employs American Underwriters, Inc. as its attorney-in-fact." From our own observation, we further note that A–U loaned the Exchange money and accepted its notes. A separation of payrolls exists segregating those employees of the Exchange from those of A–U, individually. The Department concludes that the Exchange is, for purposes here, an entity separate from A–U, and being within the definition provided by Ind.Code 6–2–1–1: a pool, association, cooperative association, or other group or combination acting as a unit.

It was conceded in oral argument that it is a common occurrence under the Indiana gross income tax for an agent to sell goods or otherwise produce income for a principal and thereby create a taxable event for the principal; a second taxable event is produced upon the payment of the personal commission by the principal to the agent.

In *Downey, supra,* 216 P.2d at 885, the court analyzed interinsurance:

"In many ways such an organization resembles a mutual insurance corporation. Its basic differences from such an organization are in mechanics of operation and in legal theory, rather than in substance. Appellant asserts that it is not a legal entity, which is undoubtedly technically correct. Obviously, it provides for a form of cooperative insurance by means of a joint venture or limited partnership. For various purposes, *the law has treated such an organization as if it were a separate entity.* (Emphasis Added)"

An interinsurance exchange was again characterized in *Farmers Insurance Group, supra,* 153 N.W.2d at 238, as follows:

"'These arrangements were characterized by Judge Sanborn in *In re Minnesota Ins. Underwriters* (D.Minn.) 36 F.2d 371, 372, as creating 'something more than a partnership and something less than an insurance corporation.'" (Footnote omitted.)

■ We recognize, as argued by A–U, that there is only one enterprise involved, which consists of the writing of high-risk, substandard insurance. Yet in the legal form of the operation, and in the final analysis, a cleavage exists and the single enterprise is compartmented. First, the interests of A–U and the Exchange are divergent, and the interests of the Exchange are not coextensive with those of A–U. According to the contract documents the subscribers are entitled to any profits and assets of the Exchange upon dissolution, and A–U has no interest in those assets. Likewise, the subscribers have no interest in the assets of A–U. All assets of the Exchange are subject to the liability of the insurance operation, but none of the assets of A–U are available to those claimants. A–U has five wholly-owned subsidiaries in which the Exchange subscribers have no interest. Second, the Exchange is treated for most purposes as an entity by A–U, public institutions, and the public at large. It sues and is sued in the name of American Interinsurance Exchange. *See United Services Automobile Association v. American Interinsurance Exchange,* (1981) Ind.App., 416 N.E.2d 875. A–U has loaned the Exchange substantial sums of money for the purpose of increasing the guaranty fund, and A–U has received the Exchange's notes as security. Separate accounts are kept, and the respective assets of A–U and

the Exchange are segregated. Bank accounts are kept in the name of the Exchange and checks written in the name of the Exchange. Policies of insurance are written in the name of the Exchange, losses adjusted in the name of the Exchange, and, in general, business is transacted in the name of the Exchange. Federal tax returns are filed in the name of the Exchange. The annual statement to the Indiana Insurance Department is published in the name of the Exchange, and other publications reflect the Investment Portfolio to be in the name of the Exchange and managed by the Indiana National Bank. These documents are not commingled with the personal assets or business of A–U. Contained in many of the documents referred to above is a brief statement that American Interinsurance Exchange is a reciprocal insurance Exchange and A–U is the attorney-in-fact.

It was conceded in oral argument by A–U that the principal advantage to writing insurance in this manner is the insulation of liability to A–U in an area of high-risk, substandard insurance. It appears that the organizers of A–U deliberately have selected this statutorily permitted vehicle of reciprocal insurance and have compartmented the enterprise to achieve that end. Different forms of business enterprises have different legal as well as tax consequences, some advantageous, and some disadvantageous. On the one hand, we view A–U as desiring to treat the Exchange as a separate entity to maintain insulation from liability, and on the other hand, as desiring to escape dual taxation by calling itself and the Exchange one single enterprise. We agree with the Department that for the purpose of the Indiana Gross Income Tax the Exchange is a pool, association, cooperative association, or other group or combination acting as a unit, and therefore is a taxable entity.

We are further unpersuaded that Ind. Code 27–6–6–12, enacted in 1919, stating that "In lieu of all other taxes . . . the attorney shall pay annually . . . the same taxes . . . as are required to be paid by mutual insurance companies" is controlling. We are not apprised of what taxes existed in 1919 to which Ind.Code 27–6–6–12 could have referred. However, the Gross Income Tax Act, enacted in 1933, specifically levied a tax on premiums for casualty insurance and personal service income. Ind.Code 6–2–1–3(b), (f), (g) (repealed 1981).[1] Ind.Code 6–2–1–2 provides that the gross income tax "shall be in addition to all other taxes now or hereafter imposed. . . ."

In sum, we hold that A–U acting as attorney-in-fact for and in the name of the American Interinsurance Exchange is a distinct entity for tax purposes and apart from A–U, the individual corporation. When A–U, as attorney-in-fact operating for the Exchange, received premiums from policyholders and other income, such transactions were a taxable event. Thereafter, when A–U, *as attorney-in-fact acting for the Exchange, paid itself* personally the 15 percent of the premium for its management fee, a second taxable event occurred. The Exchange is an entity for purposes of the Indiana Gross Income Tax Act and A–U, acting as attorney-in-fact for the Exchange, must file a separate gross income tax return for the Exchange. In addition, A–U is obligated to file a separate Indiana gross income tax return for payment of the management fee received.

## Issue III. Pro rata method

Here, the Department asserts A–U should be required to use the same method of reporting the Exchange's reserves for tax purposes that it used in the annual report to the Indiana Insurance Department. The Department concedes that the Insurance Department allows interinsurance exchanges to use either the pro rata or reciprocal methods for calculating reserves. More importantly, the Department has failed to cite any authority in support of this assertion, and therefore, has waived any alleged error by its failure to comply with our appellate rules.

---

1. Repealed by Acts 1981, P.L. 77, § 22. For present provisions on the Indiana Gross In- come Tax, *see* Ind.Code 6–2.1–1–1—Ind.Code 6–2.1–8–10.

*Issues IV and V.   Interest and costs*

■ In light of our ruling herein, the State properly assessed interest against A–U upon the amount of tax paid to the Department pursuant to Ind.Code 6–2–1–16. *See also State, Department of Revenue v. American Motorists' Insurance Company*, (1979) Ind.App., 396 N.E.2d 907.

■ Regarding costs, both A–U and the Department agree the assessment of costs against the State was improper regardless of the eventual disposition of this appeal. *State, Department of Revenue, supra; See* Ind.Code 33–1–9–1(c) (Supp.1980); and *Board of Tax Commissioners v. Warner Press, Inc.*, (1970) 254 Ind. 183, 258 N.E.2d 621.

For the reasons stated above we affirm in part and reverse in part.

RATLIFF, J., concurs.

YOUNG, J. (participating by designation), concurs.